**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **RICHARD BASCIANO, d/b/a 303 WEST 42nd STREET REALTY,** | CIVIL ACTION |
| **Plaintiff,** | |
| v. | NO.  2:11-cv-1250-JD |
| **L&R AUTO PARKS, INC.; ENTERPRISE PARKING COMPANY, LLC, t/a FIVE STAR PARKING, a California General Partnership; and FIVE STAR PARKING, a California General Partnership,** | |
| **Defendants.** | |

**DuBOIS, J.**                                                                                                         **December 19, 2011**

## M E M O R A N D U M

### I. INTRODUCTION

This case arises out of a lease agreement ("Lease" or "Lease Agreement") between plaintiff and defendant Five Star Parking ("Five Star" or "Partnership").[1] Plaintiff alleges that Five Star failed to pay the full amount of the rent due under the Lease and sued Five Star and its general partners, L&R Auto Parks ("L&R") and Enterprise Parking Company, LLC ("Enterprise"), for the past-due amounts.

Presently before the Court is Defendants L and R Auto Parks, Inc.'s and Enterprise Parking Company LLC's Motion to Dismiss. L&R and Enterprise argue that the Court may not

---

[1] According to defendants, Five Star Parking is now known as LR FSP. To avoid confusion, the Court will refer to Five Star Parking as either "Five Star" or the "Partnership" in this Memorandum.

assert personal jurisdiction over them because they lack minimum contacts with Pennsylvania. The Court concludes that it has personal jurisdiction over L&R and Enterprise and denies their Motion to Dismiss.

## II. BACKGROUND

On April 11, 1997, Five Star entered into the Lease Agreement with Dimeling and Schreiber Garage Partnership, the owner of the property located at 618-634 Market Street in Philadelphia, to lease the property for use as a public parking garage. (Am. Compl. ¶ 4.) On September 22, 1997, plaintiff purchased the property and was assigned the Lease. (Id. ¶ 5.) After the Lease expired in 2002, plaintiff and Five Star renewed it on multiple occasions, the last renewal ending on December 31, 2009. (Id. ¶ 6.) Plaintiff claims that Five Star failed to pay the full amount of the rent due under the Lease and the extensions thereto and has sued to recover the remaining balance, plus late fees, attorneys' fees, and costs.

Five Star is a general partnership formed under the laws of California with business addresses at 515 South Flower Street, Suite 3200, Los Angeles, California, and 618-634 Market Street, Philadelphia, Pennsylvania. (Id. ¶ 2.) L&R is a California corporation that maintains a place of business at 515 South Flower Street, Suite 3200, Los Angeles, California. (Id. ¶ 3.) Enterprise is a California limited liability company with the same address as L&R. (Id.) L&R and Enterprise are the general partners of Five Star. (Id.)

Plaintiff has presented evidence regarding L&R's and Enterprise's individual contacts with Pennsylvania relating to the Lease and this case. This evidence includes, inter alia, leases that L&R signed for unrelated properties, insurance contracts that L&R entered into, and

communications by L&R and Enterprise officers to plaintiff's representatives. However, because the Court concludes that it may assert jurisdiction over L&R and Enterprise solely by virtue of their status as general partners of Five Star, the Court need not review the facts that would otherwise be relevant to a personal jurisdiction analysis.

### III. STANDARD OF REVIEW

Rule 4(e) of the Federal Rules of Civil Procedure "authorizes personal jurisdiction over non-resident defendants to the extent permissible under the laws of the state where the district court sits." Pennzoil Prods. Co. v. Colelli & Assocs., 149 F.3d 197, 200 (3d Cir. 1998). Pennsylvania's long-arm statute permits courts to exercise personal jurisdiction over nonresident defendants "to the constitutional limits of the Due Process Clause of the Fourteenth Amendment." Id.; 42 Pa. Cons. Stat. § 5322(b) (West 2011).

Once a defendant has filed a motion to dismiss for lack of personal jurisdiction, the burden rests on the plaintiff to prove that jurisdiction exists in the forum state. Imo Indus., Inc. v. Kiekert AG, 155 F.3d 254, 257 (3d Cir. 1998). When considering the motion, the court construes any factual averments and resolves all doubts in the plaintiff's favor. Pinker v. Roche Holdings Ltd., 292 F.3d 1287, 1302 (3d Cir. 1996).

A court may obtain personal jurisdiction over a defendant in one of two ways. First, the court has general jurisdiction if the defendant has engaged in "systematic and continuous" contacts with the forum state and the exercise of jurisdiction is "reasonable." Helicopteros Nacionales De Colombia v. Hall, 466 U.S. 408, 416 (1984). Second, the court has specific jurisdiction if "the defendant purposefully establish[es] 'minimum contacts' in the forum." BP

Chems. Ltd. v. Formosa Chem. & Fibre Corp., 229 F.3d 254, 259 (3d Cir. 2000) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985)).

**IV. DISCUSSION**

The parties agree that the Partnership, Five Star, is subject to specific jurisdiction in this Court.[2] The dispute concerns whether the Court has specific jurisdiction over Five Star's general partners. Plaintiff argues that specific jurisdiction over the Partnership confers specific jurisdiction over the general partners automatically. Defendants, relying on the Ninth Circuit's decision in Sher v. Johnson, 911 F.2d 1357 (1990), argue that the Court must find that each partner individually has sufficient minimum contacts with Pennsylvania to exercise specific jurisdiction over the partners. Following well-reasoned decisions from the Third Circuit and around the country, the Court concludes that it has specific jurisdiction over defendants L&R and Enterprise pursuant to their status as general partners of the Partnership.[3] Thus, there is no need to consider whether either L&R or Enterprise has sufficient minimum contacts with Pennsylvania aside from their relationship with the Partnership.

---

[2] Because the Court finds that it has specific jurisdiction over all defendants and that plaintiff's claims all relate to the contacts giving rise to that specific jurisdiction, it need not determine whether any defendant is subject to the Court's general jurisdiction.

[3] On July 18, 2011, the Court held a telephone conference with the parties and stated that, in general, a court may not assert personal jurisdiction over the general partners of a partnership without some additional facts supporting jurisdiction. The parties submitted supplemental briefs on whether such additional facts existed in this case. The supplemental briefs also argued the merits of the Court's statement at the July 18, 2011, telephone conference and cited numerous cases on the question whether jurisdiction over the partnership confers jurisdiction over the partners. The Court, after reading the supplemental briefs and conducting further research, concludes that it may assert personal jurisdiction over the general partners of a partnership when it has jurisdiction over the partnership itself.

Because the Pennsylvania long-arm statute authorizes courts in Pennsylvania to assert jurisdiction over parties to the fullest extent allowed under the United States Constitution, the Court's inquiry falls under the two-part test announced by the Supreme Court in Burger King Corp. v. Rudzewicz, 471 U.S. 462 (1985). First, the Court must determine whether the defendant "purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities." Id. at 472 (internal citations and quotations omitted). In doing so, the Court considers whether the defendant "purposely avails itself of the privilege of conducting activities within the forum." Id. at 475. Second, even if the "purposeful availment" prong is met, the Court may only assert jurisdiction over a party if the exercise of that jurisdiction "comport[s] with fair play and substantial justice." Id. at 476.

### A.   Purposeful Availment

The parties agree that Five Star engaged in activities—signing the Lease and operating the parking garage—by which it purposefully availed itself of the laws of Pennsylvania. Nor is there any dispute that "the litigation results from alleged injuries that arise out of or relate to those activities," Burger King Corp., 471 U.S. at 472, because plaintiff's claim arises solely out of the Lease. The sole question is whether those activities may be attributed to L&R and Enterprise, the general partners of Five Star.

"Activities of a party's agent may count toward the minimum contacts necessary to support jurisdiction." Grand Entm't Grp., Ltd. v. Star Media Sales, Inc., 988 F.2d 476, 483 (3d Cir. 1993). Five Star is a California partnership, so the Court will look California law to determine whether the partnership acts as an agent for the partners. See, e.g., Queens Syndicate

Co. v. Herman, 691 F. Supp. 2d 283, 286–87 (D. Mass. 2010) (considering law of state where partnership was formed to answer same question).

In California, all partners are jointly and severally liable for partnership debts, and thus, any action the partnership takes within the scope of the partnership binds all of the partners individually. Cal. Corp. Code § 16306 (West 2006). For more than 130 years, California courts have followed the traditional law of partnership whereby the acts of the partnership—and/or its partners[4]—can bind all general partners; in other words, the partnership is an agent for all of the general partners in California.[5] See, e.g., In re Tsurukawa, 287 B.R. 515 (B.A.P. 9th Cir. 2002) ("[E]ach partner acts as principal for himself or herself and as agent for the copartners in the transaction of partnership business."); Elias Real Estate, LLC v. Tseng, 67 Cal. Rptr. 3d 360, 365 (App. 2007) ("[One partner] can bind the other partners without obtaining their written consent."); McKenzie v. Dickinson, 43 Cal. 119, 134 (1872) ("'Each partner is the agent of the other partners in all transactions relating to the partnership business.'" (quoting Wheeler v. Sage, 68 U.S. (1 Wall) 518 (1863)). Thus, because an agent's contacts with the forum state may be imputed to the principal, any action giving a court personal jurisdiction over a partnership also

---

[4] Most courts to consider the question have focused on whether a partner is an agent for the other partners. However, it is irrelevant whether the actor is a partner or the partnership itself, because in California, the partners are agents for the partnership. Cal. Corp. Code § 16301 (West 2006). An act committed by a partner binds the partnership, id., which in turn binds the other partners, id. § 16306. Thus, to hold that each partner is an agent for the other partners is no different than holding that the partnership itself is an agent for the partners.

[5] Even if the Court were to look at the law of the state where the Partnership committed the acts relevant to this case—Pennsylvania—the rule would be the same. See Trizechahn Gateway, LLC v. Titus, et al., 976 A.2d 474, 480 (Pa. 2009) ("Every partner . . . is . . . a general and authorized agent of the firm and of all the partners." (quoting 59A Am. Jur. 2d Partnership § 207)).

gives the court personal jurisdiction over all of the partners, at least in the case of general partners who are jointly and severally liable for the debts of the partnership. Cf. Sacramento Suncreek Apartments, LLC v. Cambridge Advantaged Props. II, L.P., 113 Cal. Rptr. 3d 661 (App. 2010) (concluding that the court lacked jurisdiction over limited partners where their only contact with the forum state was through the partnership).

This reasoning is consistent with Third Circuit precedent. In Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 95 n.1 (3d Cir. 2004), the Third Circuit rejected the defendants' argument that the contacts of each defendant must be analyzed separately in a case involving an implied partnership. Id. The court held that it "must attribute the contact of any one individual [partner] to all of the [partners]." Id.; see also Carteret Sav. Bank, F.A. v. Shushan, 954 F.2d 141, 145 n.6 (3d Cir. 1992) (declining to analyze each partner's contacts with the forum state independently because "[a] partnership and each partner is held liable for the act of every other partner."). By refusing to analyze each partner's contacts with the forum state individually, Miller Yacht and Carteret stand for the proposition that one partner's contacts with the forum state can form the basis for the court's exercising personal jurisdiction over all other partners.

Following the Third Circuit's decisions in Miller Yacht and Carteret, district courts within the Third Circuit have held that jurisdiction over a partnership confers jurisdiction over the general partners. See, e.g., Miller v. McMann, 89 F. Supp. 2d 564, 568 (D.N.J. 2000) (holding that general partners "are subject to jurisdiction in New Jersey through the contacts of [another partner] within the state"); In re Phar-Mor, Inc. Secs. Litig., 875 F. Supp. 277, 281 (W.D. Pa. 1994) (exerting personal jurisdiction over the partners where the partnership

conducted business in Pennsylvania); Morgan Guar. Trust Co. of N.Y. v. Blacksburg Assocs., No. 90-6076, 1990 WL 209297, at *2 (E.D. Pa. Dec. 13, 1990) ("[B]y investing in a Pennsylvania-based partnership, the [partners] purposefully availed themselves of the privilege of conducting activities within this forum [despite the fact that they] did not personally conduct any partnership activities in Pennsylvania.").

Courts around the country have come to the same conclusion. See, e.g., Intercont'l Leasing, Inc. v. Anderson, 410 F.2d 303, 305 (10th Cir. 1969) ("Through the instrumentality of the partnership, the individual partners purposefully availed themselves of the privilege of conducting business activities in Kansas and invoked the benefits and protections of its laws to satisfy their personal economic desires. This is enough to invoke the long-arm statute and to subject them to personal jurisdiction."); Queens Syndicate Co. v. Herman, 691 F. Supp. 2d 283, 286–87 (D. Mass. 2010) (applying New York partnership law to reach same result); Jackson Nat'l Life Ins. Co. v. Greycliff Partners, Ltd., 2 F. Supp. 2d 1164, 1167 (E.D. Wis. 1998) (applying New Jersey partnership law); Brown v. 1995 Tenet ParaAmerica Bicycle Challenge, 931 F. Supp. 592, 594–95 (N.D. Ill. 1996) ("[B]ecause I may exercise personal jurisdiction over the [partnership], I may also exercise personal jurisdiction over [the partners].")

Defendants urge the Court to follow the Ninth Circuit's decision in Sher v. Johnson, 911 F.2d 1357 (9th Cir. 1990), rather than the reasoning of the cases cited above. In Sher, a California resident sued a Florida law firm partnership and its general partners in California for malpractice stemming from a case brought against the California plaintiffs in Florida. Id. at 1360. The Sher court held that the partnership had sufficient minimum contacts with California

because plaintiffs had given the partnership a deed of trust to California real estate to secure payment for the law firm partnership's representation. Id. However, because only the partnership had the deed of trust, the Court concluded that the partners lacked sufficient minimum contacts with California to justify the court's exercise of jurisdiction over them individually. Id. at 1365. The Ninth Circuit rejected plaintiffs' argument that, without more, jurisdiction over a partnership confers jurisdiction over the partners, citing the rule that "jurisdiction over each defendant must be established individually." Id. (citing Rush v. Saychuk, 444 U.S. 320 (1980)). In doing so, the court stated:

> The Shers may have been misled into thinking that the contacts of the partnership may be imputed to the partners because the reverse is true: The contacts of the partners may establish jurisdiction over the partnership. This is so because each partner acts as an agent of the partnership when carrying on the business of the partnership in the usual way. See Fla. Stat. § 620.60(1) (1989); Cal. Corp. Code § 15009(1) (Supp.1990); cf. Wells Fargo & Co. v. Wells Fargo Express Co., 556 F.2d 406, 419 (9th Cir. 1977). However, while each partner is generally an agent of the partnership for the purpose of its business, he is not ordinarily an agent of his partners. Thus, a partner's actions may be imputed to the partnership for the purpose of establishing minimum contacts, but ordinarily may not be imputed to the other partners.

Id. at 1366.

This Court declines to follow the Ninth Circuit's decision in Sher for two reasons. First, Sher is distinguishable from this case because the Sher partnership's contacts with the forum were not directly related to the issues in controversy. In that case, defendants' representation of plaintiffs, which gave rise to the suit, took place in Florida; the deed of trust, on which jurisdiction over the partnership was based, was unrelated to plaintiffs' claims. As another court noted in Resolution Trust Corp. v. KMPG Peat Marwick, the partnership in Sher "did not have

9

an office in California and was not regularly doing business in California." No. 92-1373, 1992 WL 245705, at *5 (E.D. Pa. Sept. 23, 1992). The Resolution Trust court declined to follow Sher, finding that, unlike in Sher, defendants' contacts with the forum in Resolution Trust were "directly related to the controversy at hand." Id. The Partnership in this case, like in Resolution Trust, has an office in Pennsylvania and conducted all of the business relating to this action in Pennsylvania. Further, like the partners in Resolution Trust, L&R and Enterprise "received substantial profits" from the Partnership's activities in Pennsylvania. Id. at *6. Thus, Sher is distinguishable from the instant case. The partnership's contacts in Sher were significantly more tenuous than Five Star's contacts with Pennsylvania.

Second, and more fundamentally, the Court declines to follow Sher because the Court disagrees with the Sher court's statement of the law of partnership. The Sher decision rests on the assumption that, "while each partner is generally an agent of the partnership for the purpose of its business, he is not ordinarily an agent of his partners."[6] Sher, 911 F.2d at 1366. While the Sher court cited authority for the proposition that partners act as agents for the partnership, it did not cite any authority for the proposition that the partnership is not an agent for the partners. This lack of citation is not surprising. As explained above, it is well established that a partnership is an agent for its individual partners and the acts of any partner or the partnership itself can be

---

[6] The Court notes that, although the plaintiffs in Sher asked the court to impute the actions of the partnership (owning the deed of trust) to the other partners, the Sher court analyzed whether the actions of one partner could be imputed to the other partners in determining whether to assert personal jurisdiction over the partners. In doing so, that court assumed that the question whether the partnership is an agent for the partners is no different than the question whether the partners are agents for each other. See supra note 4.

imputed to all the other partners.[7] See, e.g., In re Tsurukawa, 287 B.R. 515, 521 (B.A.P. 9th Cir. 2002) ("[E]ach partner acts as principal for himself or herself and as agent for the copartners in the transaction of partnership business.").

Courts around the country have struggled with the question of whether jurisdiction over a partnership automatically confers jurisdiction over the general partners. See Cambridge Literary Props. v. W. Goebel Porzellanfabrik, 295 F.3d 59, 67 (1st Cir. 2002) (finding a "diversity of views among the various courts" on the issue). This Court, however, is bound by the Third Circuit decisions in Miller Yacht and Carteret. Further, the Court finds the reasoning of cases such as Miller v. McMann, 89 F. Supp. 2d 564, 568 (D.N.J. 2000); Morgan Guar. Trust Co. of N.Y. v. Blacksburg Assocs., No. 90-6076, 1990 WL 209297, at *2 (E.D. Pa. Dec. 13, 1990); and In re Phar-Mor, Inc. Secs. Litig., 875 F. Supp. 277, 281 (W.D. Pa. 1994) to be persuasive given the fact that actions of the partnership bind the general partners by reason of their joint and several liability.

Accordingly, the Court holds that Five Star's minimum contacts to Pennsylvania may be imputed to L&R and Enterprise.

---

[7] Defendants argue that Sher applied California law and thus is "relevant to the outcome in this case involving partners of a California general partnership." (Defs. L and R Auto Parks, Inc.'s and Enterprise Parking Co. LLC's Supplemental Reply Brief Supp. Mot. Dismiss Lack Jurisdiction 15.) The Sher court cited both California and Florida law in its opinion, although it cited no authority, much less California authority, for the proposition that a partnership is not an agent for the general partners. However, the partnership in Sher was a Florida partnership, and thus the Sher court's conclusory statement that, "while each partner is generally an agent of the partnership for the purpose of its business, he is not ordinarily an agent of his partners," Sher, 911 F.2d at 1366, is not a ruling under California law.

**B.      Fair Play and Substantial Justice**

Defendants do not seriously argue that the dictates of "fair play and substantial justice" prevent the Court from exercising jurisdiction over L&R and Enterprise. Burger King, 471 U.S. at 476. L&R and Enterprise are the only partners of Five Star and derived profit from Five Star's activities in Pennsylvania. Further, Five Star was a party to the Lease Agreement for more than ten years before this litigation began and signed numerous extensions to the Lease Agreement with plaintiff.  L&R and Enterprise are jointly and severally liable for Five Star's liabilities, so the legal issues are the same with respect to the three defendants. Thus, the Court finds no reason to decline to exercise personal jurisdiction over L&R and Enterprise.

**IV. CONCLUSION**

Five Star has sufficient minimum contacts with Pennsylvania to justify this Court's exercise of personal jurisdiction over it. Because Five Star is an agent for its partners L&R and Enterprise under California law, the Court attributes Five Star's contacts with Pennsylvania to L&R and Enterprise. Thus, the Court may assert jurisdiction over L&R and Enterprise for claims arising out of Five Star's operation of the parking garage at 618-634 Market Street.

An appropriate Order follows.